UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURPREET SINGH,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al.,<br>Respondents. | No. 1:26-cv-01245-DAD-CKD<br><br>ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND GRANTING RESPONDENTS' MOTION TO MODIFY ORDER<br><br>(Doc. Nos. 28, 30) |

This matter is before the court on petitioner's renewed motion for temporary restraining order (Doc. No. 28) and respondents' motion to modify the court's February 20, 2026 order (Doc. No. 30). For the reasons explained below, the court will deny petitioner's motion for temporary restraining order and grant respondents' motion to modify the court's previously issued order.

**BACKGROUND**

On February 12, 2026, petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Therein, petitioner asserted that his detention violates the Fifth Amendment Due Process Clause. (*Id.* at 3.) In support of the pending motion for temporary restraining order, petitioner has presented evidence of the following.

Petitioner was detained by ICE on January 6, 2026. (*Id.* at 1.) Petitioner argues that he is eligible to apply for adjustment of status under 8 U.S.C. § 1255(i). (Doc. No. 1 at 2.) However,

in order to complete his application for adjustment of status, petitioner needs a Form I-693, Report of Immigration Medical Examination and Vaccination Record. (*Id.* at 2.) ICE has not provided petitioner with the opportunity to complete the necessary medical examination and, as a result, petitioner alleges that he has been unable to complete his application for adjustment of status. (*Id.* at 2–3.)

Petitioner's counsel filed the pending motion for temporary restraining order on May 18, 2026. (Doc. No. 28.) In that motion, petitioner requests that the court (1) order his immediate release, (2) enjoin respondents from removing petitioner from the United States or transferring him outside the jurisdiction of this court pending resolution of the *habeas* petition, and (3) in the alternative to immediate release, order respondents to produce petitioner for a civil-surgeon examination.[1] (Doc. No. 28 at 1–2.) On May 19, 2026, respondents filed an opposition to the motion for temporary restraining order and a motion to modify the court's temporary injunction.[2] (Doc. Nos. 30, 31.) On May 21, 2026, petitioner filed a reply in support of his motion. (Doc. No. 32.) On June 22, 2026, petitioner filed a request for decision on his petition for writ of *habeas corpus*. (Doc. No. 33.)

/////

/////

[1] Petitioner previously filed a motion for temporary restraining requesting similar relief. (Doc. No. 6.) On March 24, 2026, the court issued a minute order directing the parties to meet and confer regarding facilitating a medical examination for petitioner so that he could apply for adjustment of status. (Doc. No. 18.) On March 25, 2026, the parties filed a joint status report in which they stated that they would work together to facilitate the needed medical examination. (Doc. No. 19.) On April 21, 2026, petitioner's counsel filed another status report, in which she detailed her efforts to facilitate petitioner's medical examination and explained that despite those efforts, petitioner had still not received the examination. (Doc. No. 20.) On April 27, 2026, the court held a status conference at which the court denied petitioner's motion for temporary restraining order without prejudice to its renewal after receiving assurances from counsel that they would work together to facilitate a civil surgeon appointment for petitioner. (Doc. No. 26.)

[2] On February 18, 2026, the previously assigned magistrate judge ordered respondents not to remove petitioner from the United States or transfer petitioner out of this district pending a ruling on his petition. (Doc. No. 5.) On February 20, 2026, the previously assigned district judge ordered that respondents shall not transfer petitioner outside of this district unless and until the court orders otherwise. (Doc. No. 7.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

/////

## DISCUSSION

### A. Likelihood of Success on the Merits

Petitioner argues that he is entitled to his immediate release because there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. No. 28-1 at 5.) Petitioner also argues that ICE's continued failure to facilitate his appointment with a civil surgeon, which effectively prevents him from applying for adjustment of status, violates his right to due process. (*Id.* at 6.) Respondents argue that petitioner has not met his burden to show that his removal is not reasonably foreseeable. (Doc. No. 31 at 3.) Respondents also argue that the court lacks jurisdiction to consider petitioner's second claim regarding the availability of a civil surgeon appointment pursuant to 8 U.S.C. § 1252(a)(2)(B), and that respondents are not obligated to facilitate such an appointment for petitioner. (Doc. No. 31 at 3–4.) Petitioner argues in his reply that respondents have not established a significant likelihood of removal in the reasonably foreseeable future and that § 1252(a)(2)(B) does not bar the court's review of petitioner's due process claim relating to his adjustment of status application. (Doc. No. 32 at 2–7.) Neither party disputes that the relevant detention authority in this case is 8 U.S.C. § 1231(a). (*See* Doc. Nos. 28, 31, 32.)

1. <u>Likelihood of Removal</u>

As noted above, the parties dispute whether petitioner has met his burden of showing that his removal is not significantly likely in the reasonably foreseeable future. Once a final order of removal has been entered, immigration detainees are subject to a 90-day mandatory detention period. *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). "In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 298–99 (2018) (internal citations omitted). However, "*Zadvydas* also applies to those who are subject to a final order of removal and who are detained for less than six months." *Abramian v. Bondi*, No. 25-cv-03080-DMG-SP, 2026 WL 166907, at *5 (C.D. Cal. Jan. 16, 2026). In this regard, immigration detainees who have been in post-removal detention for more than 90 days, but less than six

months may challenge the lawfulness of their detention "by establishing that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Ndandu v. Noem*, No. 3:25-cv-02939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) (collecting cases where "district courts have found that the six-month presumption is rebuttable."). "The six-month presumption of reasonability under *Zadvydas* is 'just that—a presumption.'" *Burunsuzyan v. Noem*, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (quoting *Clark v. Martinez*, 543 U.S. 371 387 (O'Connor, J., concurring)). As one district court has observed:

> Generally, "a 'presumption' can be rebutted only by contrary evidence." *Godoy v. Spearman*, 861 F.3d 956, 965 (9th Cir. 2017); *see also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."). As such, within the six-month period, "the petitioner must claim and prove [ ] that his removal is not reasonably foreseeable" to overcome the presumption. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025) (emphasis in original); *see also Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) ("[T]he presumption scheme merely suggests that the burden the detainee must carry within the first six months . . . is a heavier one than after six months has elapsed."). District courts must "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal." *Zadvydas*, 533 U.S. at 699, 121 S. Ct. 2491.

*Ndandu v. Noem*, 819 F. Supp. 3d 1155 (S.D. Cal. 2026).

Petitioner argues that he has rebutted the presumption that his continued detention is reasonable because the 90-day removal period has lapsed, and ICE has not affected his removal or presented a concrete plan to do so. (Doc. No. 28-1 at 5.) Respondents argue, first, that petitioner has not carried his burden of showing that there is not a significant likelihood of his removal and, second, that the only obstacles to petitioner's removal are the court entered temporary stays issued in this action.[3] (Doc. No. 31 at 3.) Petitioner argues in reply that respondents' assertions that ICE possesses a travel document for him and could arrange for his

---

[3] Specifically, respondents state that "On May 18th, Respondents confirmed that they have a travel document allowing Petitioner's prompt removal if this Court's stay is modified." (Doc. No. 21 at 2.) In addition, deportation officer Mears declares that ICE currently has a travel document for petitioner that will allow him to be removed to India. (Doc. No. 30-1 at ¶ 6.)

removal if permitted to do so are insufficient to show a significant likelihood of removal. (Doc. No. 32 at 4.)

The court finds that respondents' representation that travel documents have been secured and that they are prepared to execute petitioner's removal (Doc. No. 30-1 at 2) demonstrates a significant likelihood of removal in the reasonably foreseeable future where, as here, petitioner has not shown any other impediment to his removal. *See Lagunas, v. Facility Administrator et al.*, No. 5:26-cv-00507-MCS-AGR, 2026 WL 712956, at *3 (C.D. Cal. Mar. 10, 2026) (finding that the petitioner failed to meet his burden where the petitioner had valid travel documents to Mexico, respondents had successfully removed others to Mexico, and "the only barrier to his removal is the temporary stay of removal granted by the Ninth Circuit while his petition for review is pending"); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008) ("There is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that would prevent Prieto–Romero's removal to Mexico if he is ultimately unsuccessful in his petition for review."); *cf. D.S. v. Julio Hernandez, et al.*, No. 2:26-cv-01328-JNW, 2026 WL 1408517, at *3 (W.D. Wash. May 20, 2026) (finding that the petitioner's removal to Laos was not significantly likely in the reasonably foreseeable future where the petitioner did not have a travel document to Laos, did not have a Laotian passport, and DHS had not provided any assurances of when a travel document may be obtained).

Based on the foregoing, the court concludes that petitioner is not likely to succeed on the merits of his claim that his removal is not significantly likely in the reasonably foreseeable future at this time.[4]

2. Adjustment of Status

Petitioner argues that he is *prima facie* eligible for adjustment of status pursuant to 8 U.S.C. § 1255(i) and that his continued detention violates due process because it deprives him of

---

[4] The court notes that this finding is based in part on respondents' representation that the only barrier to petitioner's removal is this court's orders temporarily enjoining his removal, which in this order the court will dissolve. The court cautions respondents that, in the event that they fail to promptly carry out petitioner's removal, the court is likely to find that it has been established that petitioner's removal is no longer reasonably foreseeable and order his immediate release.

the ability to apply for relief by preventing him from obtaining the required civil-surgeon appointment. (Doc. No. 28-1 at 5–6.) Respondents argue that the court lacks jurisdiction to review this claim pursuant to § 1252(a)(2)(B) because the decision whether to grant adjustment of status is solely within the discretion of the Attorney General. (Doc. No. 31 at 3.) Respondents further argue that petitioner has failed to establish that the government has a duty to facilitate a civil-surgeon appointment. (*Id.* at 3–4.) Respondents do not address whether petitioner is *prima facie* eligible for adjustment of status. In reply, petitioner argues that § 1252(a)(2)(B) does not strip this court of jurisdiction because petitioner does not ask this court to review his adjustment of status application, but rather his continuous custody status which prevents him from exercising his right to apply for adjustment of status.[5] (Doc. No. 32 at 7.)

a. *Jurisdiction*

Section 1252(a)(2)(B) states that "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision," no court shall have jurisdiction to review a judgement granting relief under § 1255, adjustment of status. 8 U.S.C. § 1252(a)(2)(B)(i). District courts retain jurisdiction over "colorable constitutional claims that challenge the procedures used by the agency." *Chairez v. Mayorkas*, 168 F.4th 1227 (9th Cir. 2026) (emphasis in original). As another district court has explained in this regard:

> "[C]hallenges to the statutory framework," *Jennings*, 138 S. Ct. at 841, "questions of law" raised in the application or interpretation of statutes, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), and colorable constitutional claims, such as "claims that the discretionary process itself was constitutionally flawed[,] are 'cognizable in federal court.' " *Singh v. Holder*, 638 F.3d 1196, 1202

---

[5] Petitioner also requests an order enjoining his removal from the United States. (Doc. No. 28 at 2.) To the extent that petitioner requests that this court enjoin his removal so that he may adjudicate his adjustment of status application, the court concludes that it lacks jurisdiction to do so. *See Kaur v. Bondi*, No. 25-cv-03263-KK-MAR, 2025 WL 4648811, at *2–3 (C.D. Cal. Dec. 18, 2025) (noting that § 1252(g) strips the court of jurisdiction to enjoin the respondents from removing the petitioner while she adjudicated her adjustment of status application); *Jatta v. Clark*, No. 19-cv-2086-BJR-MAT, 2020 WL 7700226, at *8–10 (W.D. Wash. July 17, 2020) (determining that the petitioner's request to stay his removal so that he might apply for adjustment for status arose from ICE's decision to execute his removal order, and the court therefore lacked jurisdiction to consider it), *report and recommendation adopted in part*, No. 19-cv-2086-MJP-MAT, 2020 WL 7138006 (W.D. Wash. Dec. 5, 2020).

(9th Cir. 2011) (quoting *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 829 (9th Cir. 2002)).

*Ramirez-Herrera v. Barr*, No. 19-cv-00455-TUC-RM (LAB), 2020 WL 13544985, at *2 (D. Ariz. Aug. 31, 2020). Although the court retains jurisdiction to review due process challenges, "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) (noting that the petitioner did not contend that "he was prevented from presenting his case before the immigration judge or the [Board of Immigration Appeals ("BIA")], denied a full and fair hearing before an impartial adjudicator or otherwise denied a basic due process right. Rather, he urges that the BIA erred in its finding that he did not meet the requirement of 'extreme hardship.'").

The question before the court is not whether petitioner should be granted adjustment of status, but rather whether petitioner's continuous detention, which effectively prevents him from applying for adjustment of status, violates due process. As to that issue, the undersigned concludes that § 1252 does not strip the court of jurisdiction because petitioner presents a constitutional claim challenging the agencies' procedures.

c. *Statutory and Due Process Rights*

Petitioner contends that his detention and ICE's refusal to facilitate a required medical examination effectively prevent him from applying for adjustment of status in violation of his statutory and due process rights. (Doc. No. 28-1 at 6.) Respondents argue that petitioner has not shown that his removal would extinguish his statutory right to apply for adjustment of status and that petitioner has not identified any authority which would require respondents to facilitate a civil surgeon appointment. (Doc. No. 31 at 4.) Petitioner argues in reply that removal would indeed, as a practicable matter, extinguish his ability to apply for adjustment of status. (Doc. No. 32 at 7.)

/////

/////

/////

i. Statutory Right to Apply for Adjustment of Status

Both parties assume that petitioner has a statutory right to apply for adjustment of status.[6] However the parties dispute whether petitioner's continuous detention and anticipated removal would unlawfully prevent him from exercising that statutory right.

The Ninth Circuit has explained that the Attorney General maintains discretion to "regulate the process by which status will be adjusted except for three statutory prerequisites: (1) the alien must make an application; (2) the alien must be eligible to receive an immigrant visa and be admissible; and (3) an immigrant visa must be immediately available to the alien at the time he applies." *Ruiz-Diaz v. United States*, 618 F.3d 1055, 1061 (9th Cir. 2010) ("*Ruiz Diaz I*"). The Ninth Circuit has also explained that "Congress did not delegate to the Attorney General the discretion to choose who [is] eligible to apply for [adjustment of status]." *Bona v. Gonzales*, 425 F.3d 663, 670 (9th Cir. 2005) (invalidating a regulation which precluded arriving noncitizens who were paroled into the United States from applying for adjustment of status because it went beyond regulating "the manner in which such applications shall be made"). The Ninth Circuit held in *Ruiz Diaz I* that a regulation that delayed the adjudication of adjustment of status applications was valid within the statutory scheme, in part because the regulation did not impact the eligibility criteria or who could apply for adjustment of status, even where the effect of the delay was a denial of the individual's application. *Ruiz Diaz I*, 618 F.3d at 1060–1061.

Here, petitioner argues that his continuous detention and upcoming removal, in effect prevent him from applying for adjustment of status. (Doc. No. 32 at 7.) However, it appears to the court that the government's decision to detain petitioner does not prevent him from applying

[6] In light of the parties' assumption that petitioner has a statutory right to apply for adjustment of status, the court notes that petitioner argues he is eligible to adjust status pursuant to § 1255(i), which provides that a noncitizen who is present in the United States, subject to certain requirements, "may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(i)(1). The Ninth Circuit has stated that this section confers the right to apply for adjustment of status. *Guevara v. Holder*, 649 F.3d 1086, 1093 (9th Cir. 2011) ("Generally, aliens must have lawful status prior to applying for adjustment of status. Congress, however, made an exception for those aliens who entered without inspection[] . . . if they were the beneficiary of a visa petition filed before April 30, 2001. [citation] This exception, however, only confers the right to apply.") (overruled on other grounds in *Holder v. Martinez Gutierrez*, 566 U.S. 583, 588–598 (2012)).

for adjustment of status, as was the case in *Bona*, where any noncitizen paroled into the United States was deemed ineligible by the invalidated regulation. Rather petitioner may still apply for adjustment of status even though his detention effectively makes the denial of his application likely, as was the case in *Ruiz Diaz I*. In short, petitioner's detention does not prevent him from exercising his statutory right to apply for adjustment of status.

Petitioner argues that, as a practical matter, his removal would extinguish his ability to apply for adjustment status because he would be subject to inadmissibility bars which require discretionary waivers and may not be available for ten years. (Doc. No. 32 at 7.) However, as noted above, the court does not have the authority to stay petitioner's removal. *See Kaur*, 2025 WL 4648811, at *2–3 (noting that § 1252(g) strips the court of jurisdiction to enjoin the respondents from removing the petitioner while she adjudicated her adjustment of status application). While petitioner's continuous detention and removal may impede his application for adjustment of status from being granted, it does not prevent petitioner from applying for that relief. The court therefore concludes that petitioner has not established that he is likely to succeed on the merits of his claim that his detention prevents him from exercising his statutory right apply for adjustment of status.[7]

/////

---

[7] The court notes that respondents' counsel represented to both the court and to petitioner that respondents would assist in facilitating petitioner's medical examination, including by his transfer to an appointment outside of the immigration detention facility at which he is being held. (*See* Doc. Nos. 19, 20, 24, 26.) Indeed, in their April 26, 2026 joint status report, respondents stated "[o]n April 24, 2026, Bakersfield ICE confirmed receipt of the approval to accommodate transportation for Petitioner's in-person medical examination, upon receipt of a 10-day notice. The parties jointly agree to proceed in accordance with these instructions and will coordinate and facilitate Petitioner's transportation for the appointment." (Doc. No. 24 at 1.) Despite these representations, it is apparent that petitioner never received this medical evaluation. Respondents now argue that petitioner has failed to show that respondents have a duty to facilitate the appointment. (Doc. No. 31 at 4.) Respondents further suggest that petitioner has declined a reasonable accommodation to have the examination occur at the detention facility despite their earlier agreement to transport petitioner to the examination. (*Id.*) The court is troubled by respondents' conduct in this regard. It would now appear reasonable for future petitioners to request court orders adopting the stipulations of the parties in such cases because respondents' conduct in this case suggests that they will not take action absent an enforceable court order requiring them to act. Moreover, the court admonishes counsel that respondents' conduct in this case despite counsel's representations has unnecessarily delayed the resolution of this action.

ii. Due Process Right to Apply for Adjustment of Status

Petitioner argues that his Fifth Amendment right to due process in deportation proceedings should also apply to adjustment of status proceedings. (Doc. No. 28-1 at 6.) In their opposition, respondents do not address whether petitioner has any due process rights in this regard. (Doc. No. 31.)

"The Fifth Amendment guarantees due process in deportation proceedings." *Zetino v. Holder*, 622 F.3d 1007, 1013 (9th Cir. 2010) (considering an appeal from the BIA's denial of the noncitizen's applications for asylum and withholding of removal). A noncitizen "must receive a 'full and fair hearing,' in order to meet the requirements of due process." *Id.* (quoting *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

While noncitizens maintain due process rights in connection with their removal procedures, noncitizens do not have a substantive due process right to adjustment of status. This is because adjustment of status "is a form of relief committed to the Secretary's discretion, and '[s]ince discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause.'" *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010).

Still, petitioner does not appear to argue that he has a due process right to adjustment of status, but rather that he has a due process right to apply for adjustment of status. (Doc. No. 28-1 at 5–6.) As the Ninth Circuit has explained in relation to applications for adjustment of status, a regulation which "compound[s] frustration caused by delay" does not violate due process unless petitioner has "some 'legitimate claim of entitlement'" to apply prior to removal. *Ruiz-Diaz v. United States*, 703 F.3d 483 (9th Cir. 2012) ("*Ruiz Diaz II*") (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (holding that a regulation which delayed adjustment of status applications, where delay resulted in denial, did not violate due process because the plaintiffs were unable to show a legitimate claim of entitlement to their suggested procedure). Here, petitioner has failed to point to any authority establishing that he has a legitimate claim of

entitlement to apply for adjustment of status prior to his removal. Absent such authority, the court is unable to find that petitioner's continuous detention and removal violate his due process rights, even if they may have the effect of delaying or impeding his adjustment of status application. *See Tavares v. US Immigr. & Customs Enf't & Removal Operations, Field Off. Dir.*, No. 26-cv-00222-LM-AJ, 2026 WL 1382996, at *4 (D.N.H. May 18, 2026) (holding that the petitioner's due process claim based on his claim that his detention deprived him of a meaningful opportunity to pursue adjustment of status failed because he did not have a protected property or liberty interest in adjustment of status). Therefore, the court concludes that petitioner has failed to show he is likely to succeed on the merits of his claim that his detention and removal violate due process in relation to any adjustment of status application.

Because petitioner has not carried his burden of establishing that he is likely to succeed on the merits of his claims, the court need not consider the other *Winter* factors. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("Likelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' we need not consider the other factors.") (quoting *Disney*, 869 F.3d at 856).

**CONCLUSION**

For the reasons explained above,

1. Petitioner's motion for temporary restraining order (Doc. No. 28) is DENIED;
2. Respondents' motion (Doc. No. 30) to modify the court's February 18, 2026 and February 20, 2026 orders (Doc. Nos. 5, 7) is GRANTED and to the extent those orders enjoined petitioner's removal they are DISSOLVED; and

/////

/////

/////

/////

/////

/////

/////

3. This matter is referred to the assigned magistrate judge for further proceedings on the *habeas* petition.

IT IS SO ORDERED.

Dated: **July 20, 2026**

Dale A. Drozd
DALE A. DROZD
UNITED STATES DISTRICT JUDGE